UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IN RE NOVEMBER 2005 LAND INVESTORS, LLC,<br><br>Debtor. | OPINION |
| BOH PARK HIGHLANDS NV, L.P.,<br><br>Appellant,<br>v.<br>WILMINGTON TRUST, NATIONAL ASSOCIATION,<br><br>Appellee. | 2:13-CV-00639-PMP-CWH<br><br>Bankr. No. BK-S-11-20704-MKN<br>Adv. No. 11-01333-MKN |
| BOH PARK HIGHLANDS NV, L.P.,<br><br>Appellant,<br>v.<br>WILMINGTON TRUST, NATIONAL ASSOCIATION,<br><br>Appellee. | 2:13-CV-01204-PMP-CWH<br><br>Bankr. No. BK-S-11-20704-MKN<br>Adv. No. 11-01333-MKN |

Before the Court is Appellant BOH Park Highlands NV, L.P.'s appeal of the bankruptcy court's order granting summary judgment in favor of Appellee Wilmington Trust regarding the disposition of approximately $4.9 million realized from the sale of the Debtor's property.

## I. BACKGROUND

The following factual recitation is taken largely from the parties' stipulated facts. The Debtor, November 2005 Land Investors, L.L.C. ("November 2005"),[1] was formed in 2005 for the purpose of acquiring land in North Las Vegas, Nevada to develop a master planned community with another company, DRHI, Inc. ("DRHI"). (Appx. Vol. 6 (Doc. #24) at R226.) November 2005 was wholly owned by NLV Holding, LLC, which in turn was owned by a consortium of four home builders referred to in the relevant agreements as the "Participants." (Id. at R227.)

On March 1, 2006, November 2005 entered into the Amended and Restated Infrastructure Funding Agreement ("IFA") with DRHI and another company which was to become the development manager for the project. (Id. at R228.) Under the IFA, November 2005 and DRHI were responsible for funding infrastructure costs associated with the development, with November 2005 paying eighty percent of the costs and DRHI paying twenty percent. (Id.) Pursuant to the IFA, the development manager could make cash calls on DRHI and November 2005 to fund an infrastructure escrow, which the development manager would use to pay infrastructure costs. (Id. at R228-29.) The IFA contained a funding schedule which required DRHI to fund cash calls on an accelerated basis during the initial stages of the project. (Id. at R229.) As a result, the agreement contemplated that DRHI would fund more than its twenty percent share of costs in the early stages of the project. (Id.) The IFA referred to these excess payments as Builder Excess Funding. (Id.) The IFA was not recorded against the property. (Id.)

November 2005, DRHI, the development manager, and the Participants also entered into the Conditional Repayment and Funding Agreement ("CRFA"). (Id.) Pursuant

---

[1] Debtor November 2005's bankruptcy was jointly administered with Debtors NLV Holding, LLC and BOPH, Inc. (Appx. Vol. 6 at R225.)

2

to Section 1 of the CRFA, if a lender "exercises remedies" in connection with the purchase financing, and "the exercise of such remedies results in a transfer of title to all or any portion" of the property, "whether by foreclosure, deed-in-lieu of foreclosure, or otherwise," then the acquirer must elect either to assume the CRFA or buy out DRHI by making a Buyout Payment. (Appx. Vol. 4 (Doc. #22) at R131-32.)

Section 6 of the CRFA governs releases from the CRFA in the event November 2005 sold the property or otherwise wanted to release the property or a portion thereof from the CRFA. (Id. at R135.) Pursuant to Section 6.1.b, if November 2005 sold or otherwise transferred the property to someone other than a Participant or someone who obtained the property through a foreclosure, the purchased property would be released from the CRFA automatically upon recordation of a Development Declaration encumbering the released property. (Id. at R135-36; see also Appx. Vol. 1 at R22.) A form of Development Declaration was attached to the IFA, and generally provides that the owner of property within the project agrees to develop the property in conformity with the development plan for the master planned community. (Appx. Vol. 13 (Doc. #31) at R501-20, Vol. 14 (Doc. #32) at R521-34.) The Development Declaration refers to the IFA, but not the CRFA. (Appx. Vol. 13 at R502, R532.)

Section 6.1.c of the CRFA permits a release when a Participant transfers property upon recording a Development Agreement and by the Participant providing a letter of credit sufficient to cover that Participant's Buyout Share. (Appx. Vol. 4 at R135.) Section 6.1.d permits a release for any reason, upon November 2005 or a Participant providing a letter of credit sufficient to cover the Buyout Payment, which could be drawn upon if there is a default in the required payment of the Partial Share or Participant Buyout Share. (Id. at R135.) The Partial Share and Participant Buyout Share refer back to Section 1's buyout option. (Id. at R131-32.)

///

Pursuant to Section 27(iii), the CRFA "shall automatically terminate and be of no further force and effect upon . . . the payment to [DRHI] of the Builder Excess Funding."[2] (Id. at R141; see also Appx. Vol. 5 (Doc. #23) at R176.) Pursuant to Section 7 of the CRFA, all obligations in the CRFA "are intended by the Parties to be, and shall be construed as, covenants running with" the land. (Appx. Vol. 4 at R137.)

On May 9, 2006, November 2005 and DRHI purchased the property from the Bureau of Land Management. (Appx. Vol. 6 at R227.) November 2005 financed the land purchase through a consortium of lenders who obtained first and second liens on the property to secure the debt. (Id. at R227.) The first and second lien lenders recorded their liens on May 9, 2006, but after the CRFA was recorded against the property. (Id. at R227-28.)

In 2008, Appellant BOH Park Highlands NV, L.P. ("BOH") purchased and was assigned all of DRHI's rights and interests in the project. (Id. at R230.) In 2009, November 2005 filed its first voluntary petition for bankruptcy. (Id.) To settle various claims amongst the parties, November 2005, the development manager, BOH, and others entered into the Second Amendment to the IFA, the First Amendment to the CRFA, and the 2009 Letter Agreement. (Id.) Pursuant to the Second Amendment to the IFA, BOH was formally substituted as DRHI's assignee. (Appx. Vol. 4 at R153, R155.) Additionally, the parties agreed that BOH would be relieved from making any further accelerated infrastructure payments under the IFA. (Id. at R157.) The parties still were obligated to fund their respective share of all costs and expenses contemplated by the development budget then in effect. (Id.) However, the parties agreed that until the Builder Excess Funding was eliminated, BOH had to pay only ten percent of its share of costs, and November 2005 would pay the other ten percent of BOH's share until Builder Excess

---

[2] The parties agree Section 27(i) and (ii) are not relevant to this dispute.

Funding was reduced to zero. (Id.) The parties also agreed that as of that date, the Builder Excess Funding was $4,980,687.66, and a Buyout Payment would amount to $3,230,264.00. (Id. at R158; see also Appx. Vol. 6 at R230.)

The parties made similar changes in the First Amendment to CRFA regarding the identity of the relevant contracting parties and the amount of the Builder Excess Funding. (Appx. Vol. 5 at R174-75.) In the 2009 Letter Agreement, BOH "acknowledge[d] that all of [its] rights and interests in and to the Infrastructure Agreement are subject and subordinate to the lien of any deed of trust or security interest securing the obligations of Borrower, Holdings or any guarantor of any Credit Agreement pursuant to the terms of the Credit Agreements." (Id. at R192.) Appellee Wilmington Trust ("Wilmington") became the administrative agent for the first lien lenders in December 2009. (Appx. Vol. 6 at R231.)

November 2005 thereafter failed to make a full payment to the first lien lenders in March 2010, and November 2005 filed its second bankruptcy petition on July 6, 2011. (Id. at R232.) November 2005's assets consisted primarily of the property. (Id.) At the time of the petition, the first lien lenders held first and second liens in the amount of $238,886,627.49. (Id.) November 2005's schedules listed BOH as having a secured claim of $3,230,264.00. (Id.)

November 2005 moved the bankruptcy court to permit a sale of the property free and clear of any liens pursuant to Section 363 of the Bankruptcy Code. (Id.) BOH and Wilmington disputed the procedures to effect a sale as well as the priority of their competing claims. (Id. at R233-34.) Wilmington brought an adversary complaint against BOH seeking to permit the sale of the property free and clear of the CRFA and for a determination of the validity, priority, and amount of the parties' liens. (Id. at R234.)

The parties thereafter entered into a stipulation regarding the sale of the property pursuant to which the property would be sold free and clear of the CRFA under Section

5

1   363.  (Id.)  Specifically, the parties stipulated the property would "be sold free and clear of
2   the CRFA pursuant to either, or both (1) Section 363(f)(4) of the Bankruptcy Code on the
3   basis that the CRFA may be subject to a bona fide dispute and/or (ii) Section 363(f)(5) of
4   the Bankruptcy Code on the basis that BOH can be compelled to accept a money
5   satisfaction of the CRFA."  (Appx. Vol. 19 (Doc. #37) at R751.)  Additionally, the parties
6   stipulated that the "interests of BOH in the Property arising by virtue of the CRFA and the
7   liens of the First Lien Lenders in the Property shall attach to the proceeds of the sale of the
8   Property to the same extent and with the same priority that such interests and liens have
9   with respect to the Property."  (Id. at R751.)  The parties "reserve[d] all rights and
10  arguments as to what effect a sale free and clear of the CRFA pursuant to either, or both,
11  Section 363(f)(4) and/or 363(f)(5) of the Bankruptcy Code has upon their respective rights
12  to the Held Proceeds."  (Id. at R752.)  As a result, approximately $4.9 million of the
13  proceeds reflecting the full amount of the Builder Excess Funding would be held by
14  November 2005 following the sale pending the resolution of the competing claims between
15  BOH and Wilmington.  (Id.)  The property was sold in December 2011 to a third party for
16  $21 million.  (Appx. Vol. 6 at R234.)

17          Following the sale, the parties filed cross motions for summary judgment.  BOH
18  filed two summary judgment motions.  In its first motion, BOH argued that the property
19  could not have been sold pursuant to Section 363(f)(4) because property can be sold free
20  and clear of an interest under Section 363(f)(4) only where that interest is the subject of a
21  bona fide dispute.  BOH contends there was no dispute over BOH's priority interest under
22  the CRFA because both parties agreed the CRFA was valid and was recorded prior to the
23  lenders' liens.   (Appx. Vol. 18 (Doc. #36) at R709-10.)

24          As for Section 363(f)(5), BOH argued the only way November 2005 could force
25  BOH to accept a monetary satisfaction of its contractual rights would be to terminate the
26  CRFA under Section 27(iii) by paying BOH the full amount of the Builder Excess Funding.

(Id.) BOH also argued that because its rights under the CRFA were recorded prior to the first and second lender liens, BOH's claim to the proceeds was superior to the lenders' liens. (Id.) BOH therefore requested the bankruptcy court award it $4,980,687.66 in held proceeds as the amount the parties previously had agreed reflected the Builder Excess Funding. (Id. at R709.) In its second motion for summary judgment, BOH argued in the alternative that if the bankruptcy court concluded that Section 1 of the CRFA, which provided for a buyout of BOH's rights under the CRFA upon foreclosure by the lenders, was relevant, then BOH was entitled to the Buyout Payment of $3,230,264.00. (Appx. Vol. 19 (Doc. #37) at R727-28.)

Wilmington also moved for summary judgment, arguing that the sale could have been approved under either Section 363(f)(4) or Section 363(f)(5). As to Section 363(f)(4), Wilmington argued a genuine dispute existed between the parties as to whether BOH held a valid lien in any amount. (Appx. Vol. 20 (Doc. #38) at R769.) Specifically, Wilmington argued that BOH was entitled to payment under the CRFA only if Section 1 were triggered, and that required the lenders to foreclose resulting in a transfer of the property. (Id. at R766-69.) Because the lenders did not foreclose and the transfer of the property was not the result of a foreclosure, Wilmington contends BOH had no right to payment under the CRFA. (Id.) As to Section 363(f)(5), Wilmington argues BOH's interests in the CRFA theoretically were capable of monetary satisfaction, but because Section 1 was never triggered, that interest was of no value. (Id. at R771-74.) Wilmington asserted that Section 27(iii) had no application because Section 363(f)(5) does not require terminating a contract to sell a property free and clear of that contract. (Id.)

The bankruptcy court granted summary judgment in Wilmington's favor. (Notice of Appeal (Doc. #1), Ex. A.) The bankruptcy court found the sale was authorized under Section 363(f)(4) because the parties had a bona fide dispute about whether BOH had a valid entitlement to payment under the CRFA. (Id. at 13.) The bankruptcy court also found

7

BOH was not entitled to the Buyout Payment because Section 1 of the CRFA was not triggered where the debtor, rather than the first lien holders, sold the property. (Id. at 12-20.) The bankruptcy court further concluded Section 27(iii) of the CFRA did not compel termination and payment of the buyout amount in the event of a voluntary bankruptcy petition. (Id.) The bankruptcy court thus ruled that BOH had no right to a Buyout Payment, and Wilmington therefore was entitled to summary judgment. (Id. at 20.)

BOH now appeals. BOH argues Wilmington never has challenged the existence or validity of the CRFA, and the parties agree that Section 1 of the CRFA never was triggered. BOH argues the parties therefore never had a bona fide dispute over the validity of BOH's interest; rather the parties disputed only the value of that interest. BOH contends the sale consequently could not have been authorized under Section 363(f)(4). BOH contends the sale could have been authorized only under Section 363(f)(5), and only through the termination provision of Section 27(iii) of the CRFA, pursuant to which BOH is entitled to the entire amount of the Builder Excess Funding. BOH argues that regardless, BOH is entitled to the full value of its senior interest under Section 363(e), which requires adequate protection for the extinguished interest when a sale is made free and clear of that interest under Section 363(f). Alternatively, BOH contends genuine issues of fact remain regarding the value of BOH's interest given other provisions in the CRFA relating to release and termination of BOH's rights.

Wilmington responds by arguing the bankruptcy court correctly found the parties had a bona fide dispute regarding BOH's interest because the parties disputed BOH's entitlement to recovery under the CRFA. Wilmington contends that BOH's contractual right to payment under the CRFA was conditional on the first lien lenders foreclosing and the foreclosure resulting in a transfer of the property. Because neither of those things occurred, and now can never occur given the sale by the Debtor, Wilmington asserts BOH has no rights under the CRFA.

As to Section 363(f)(5), Wilmington argues BOH theoretically could have been compelled to accept monetary satisfaction of its interests under both Section 27(iii) and Section 6.1 of the CRFA. As to Section 6.1, Wilmington asserts BOH's interests could be satisfied by a letter of credit to be drawn upon if and when a foreclosure occurred and a buyout payment became due. Wilmington argues Section 6.1 reflects the conditional nature of BOH's right to payment under the CRFA, which could have been satisfied by a conditional payment mechanism such as a letter of credit. As to Section 27(iii), Wilmington argues that provision merely describes when the agreement terminates, but it does not independently require payment absent Section 1 being triggered. Wilmington further argues that Section 363(f)(5) requires only that an interest hypothetically be subject to monetary satisfaction, not that it actually be paid in full. Finally, Wilmington contends BOH raises the argument that it nevertheless is entitled to adequate protection under Section 363(e) for the first time on appeal, and for the reasons already stated that BOH's interest in the property is worth nothing.

**II. DISCUSSION**

The Court reviews de novo the Bankruptcy Court's conclusions of law, "including its interpretation of the Bankruptcy Code." In re Rains, 428 F.3d 893, 900 (9th Cir. 2005). The Court may affirm the bankruptcy court's decision "on any ground fairly supported by the record." In re Warren, 568 F.3d 1113, 1116 (9th Cir. 2009).

Title 11 U.S.C. Section 363(f)(5) permits a sale free and clear of a third party's interest if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." To satisfy Section 363(f)(5), there must exist a possible legal or equitable proceeding "in which the nondebtor could be compelled to take less than the value of the claim secured by the interest." In re PW, LLC, 391 B.R. 25, 42, 45 (B.A.P. 9th Cir. 2008) (emphasis omitted). "The [phrase] 'could be compelled' has been interpreted to mean that, on a hypothetical basis, a creditor could be required to accept

money in satisfaction of its interest, not that the condition must actually have occurred." In re MMH Auto. Group, LLC, 385 B.R. 347, 371 (Bankr. S.D. Fla. 2008). Examples of such mechanisms include a buyout provision or a liquidated damages clause in an agreement that may compel a party to the agreement to accept less than what its claim is worth. In re PW, LLC, at 43-44. Full payment to satisfy the third party's interest "is not necessary," because "it is not the amount of the payment that is at issue, but whether a mechanism exists to address extinguishing the lien or interest without paying such interest in full." Id. (quotation omitted); see also id. at 43 ("If full payment were required, § 363(f)(5) would merely mirror § 363(f)(3) and render it superfluous.").

Here, BOH argues Section 27(iii) is the only mechanism by which November 2005 could have compelled BOH to accept a money satisfaction of its interests in the CRFA. However, at least two other provisions of the CRFA provide a possible means of forcing BOH to accept less than the full value of its claim under the CRFA.[3] Under Section 1, BOH could have been compelled to accept a Buyout Payment in the event the first lien lenders foreclosed. The full amount of BOH's interest in the CRFA is the full amount of the Builder Excess Funding, amounting to $4,980,687.66. The Buyout Payment, in contrast, would amount to $3,230,264.00, less than full satisfaction of BOH's interest. Although the first lien lenders did not foreclose, hypothetically a mechanism existed to force BOH to release its interest in the CRFA for less than full satisfaction, even if that circumstance did not actually occur.

Further, Section 6.1.d allows for any portion or all of the property to be released from the CRFA automatically upon November 2005 or a Participant providing a letter of

---

[3] BOH contends that under Section 27(iii), BOH would be entitled to the entire Builder Excess Funding amount, and thus its interest would be paid in full. If so, Section 27(iii) is not a mechanism by which BOH could be compelled to accept money satisfaction for less than the full amount of BOH's interest in the CRFA, as payment of the entire Builder Excess Funding amount would be full satisfaction of BOH's interest in the CRFA. See In re PW, LLC, 391 B.R. at 42.

10

credit sufficient to cover the Buyout Payment.  The letter of credit could be drawn upon only if there is a default in the required payment of the Partial Share or Participant Buyout Share.  The Partial Share and the Participant Buyout Share become relevant only if the first lien lenders foreclosed and the foreclosure resulted in a transfer of the property.  Consequently, under Section 6.1.d, BOH could be required to accept a conditional letter of credit in full satisfaction of its interests under the CRFA, the letter of credit could be drawn on only under certain circumstances, and then only up to the amount of the Partial Share or Participant Buyout Share, not the full amount of the Builder Excess Funding.  Section 6.1.c similarly permits a release of property from the CRFA when a Participant transfers property upon recording a Development Agreement and by the Participant providing a letter of credit sufficient to cover that Participant's Buyout Share, not the full amount of the Builder Excess Funding.  The sale of the Debtor's property therefore was authorized under Section 363(f)(5), but that does not compel awarding BOH the Builder Excess Funding under Section 27(iii) of the CRFA.

   BOH argues it nevertheless is entitled to the Builder Excess Funding under Section 363(e).[4]  Section 363(e) provides that "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . . ."  Typically this is accomplished through granting a replacement lien in the proceeds of the sale, and then distributing the proceeds in accordance with the resolution of the dispute.  In re Clark, 266 B.R. 163, 171-72 (B.A.P. 9th Cir. 2001); see also 11 U.S.C. §§ 363(e), 361.

///

---

[4] Wilmington argues BOH raises Section 363(e) for the first time on appeal, and therefore waived its arguments regarding Section 363(e).  However, BOH referenced Section 363(e) in its summary judgment briefing before the bankruptcy court. (Appx. Vol. 19 (Doc. #37) at R722, R732.)

Here, the bankruptcy court provided adequate protection for BOH's interest through approval of the parties' stipulation regarding the sale. The stipulation provided that the maximum amount of BOH's interest would be withheld from the proceeds of the sale, and the parties' interests would attach to the proceeds to the same extent and with the same priority as they had with respect to the property. However, affording adequate protection under § 363(e) does not mean BOH is entitled to full satisfaction of its claim. It simply preserved the status quo pending resolution of the dispute between the parties as to the priority of their claims.

As the bankruptcy court concluded, no genuine issue of fact remains that BOH had no right to payment senior to the first lien lenders. BOH's rights under the CRFA were contingent on a foreclosure by the first lien lenders resulting in a transfer of the property, which undisputably did not happen and now can never happen because the Debtor sold the property. Under Section 1 of the CRFA, BOH was entitled to a Buyout Payment only if the first lien lenders foreclosed, the foreclosure resulted in a transfer of property, and the successor elected to buyout BOH. Until those events occurred, BOH had no right to payment under Section 1 of the CRFA. It is undisputed none of those events occurred to trigger a right to payment.

Further, BOH had no right to payment under any release provision in Section 6. Although Section 6 required Development Declarations or conditional letters of credit under the various release scenarios, none provided for an unconditional right to payment. Because none of the conditions for drawing on a letter of credit were triggered, BOH had no right to payment under Section 6. Even if BOH had a senior right to a conditional letter of credit under Section 6, the letter of credit would be worth nothing, because the conditions allowing BOH to draw on the letter of credit never can occur. Under Sections 6.1.c and 6.1.d, BOH could draw on the letter of credit only in the event of a later foreclosure by the first lien lenders in the amount of the Participant Buyout Share or the applicable share of the

Buyout Election.  As the first lien lenders could not foreclosure during the automatic stay, and now never can foreclose, any letter of credit under Section 6 would be for zero dollars.

Finally, Section 27(iii) does not compel payment, and therefore does not provide BOH with a senior right to payment.  Section 27(iii) states only that if the Builder Excess Funding reaches zero, the CRFA automatically terminates.

For the reasons discussed, the sale was authorized under Section 363(f)(5), and no genuine issue of material fact remains that BOH has no right to payment senior to the first lien lenders.  The Court therefore will affirm the bankruptcy court's order.  As a result, the Court need not address the parties' arguments regarding whether the sale also was authorized under Section 363(f)(4).

**III.  CONCLUSION**

The sale was authorized under Section 363(f)(5).  The parties' respective interests attached to the sale proceeds to the same extent and with the same priority as they had with respect to the property.  No genuine issue of fact remains that BOH had no senior right to payment in any amount.  The bankruptcy court's Memorandum Decision on Motions for Summary Judgment and Order on Motions for Summary Judgment are hereby AFFIRMED.

Judgment is hereby entered in favor of Appellee Wilmington Trust, National Association and against Appellant BOH Park Highlands NV, L.P.

DATED:  January 20, 2014

_____
PHILIP M. PRO
United States District Judge